Allison C. Binney
Merrill C. Godfrey (No. 16-208)
Akin Gump Strauss Hauer & Feld, LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036-1564
(202) 887-4000
abinney@akingump.com
mgodfrey@akingump.com

*Attorneys for AMERIND Risk Management Corporation, Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| AMERIND RISK MANAGEMENT CORPORATION, a federally chartered Section 17 Tribal Corporation,<br><br>      Plaintiff,<br><br>    v.<br><br>BLACKFEET HOUSING,<br><br>      Defendants. | Case No. 1:16-cv-1093<br><br>**COMPLAINT** |

For its complaint against the defendants, plaintiff AMERIND Risk Management Corporation alleges and states:

### NATURE OF THE ACTION

1. This is an action to protect AMERIND Risk Management Corporation ("AMERIND") from litigation in the Blackfeet tribal courts in excess of those courts' jurisdiction.

2. AMERIND brings this action seeking declaratory relief and injunctive relief.

1

## PARTIES

3. Plaintiff is a federally chartered tribal corporation organized under 25 U.S.C. § 477 with its principal place of business on the Pueblo of Santa Ana in New Mexico, a federal Indian reservation.

4. Defendant Blackfeet Housing is the Tribally Designated Housing Entity of the Blackfeet Tribe.

5. Blackfeet Housing is a state-law corporation organized under the laws of the state of Montana with its principal place of business in Browning, Montana.

## JURISDICTION

6. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1332 (diversity jurisdiction); 28 U.S.C. § 1367 (supplemental jurisdiction); and 28 U.S.C. §§ 2201-2202 (the Declaratory Judgment Act).

7. The Court has federal question jurisdiction because this case seeks to halt litigation in excess of the jurisdiction of Blackfeet tribal courts. The scope of jurisdiction of tribal courts over non-members of tribes, such as the scope of the Blackfeet tribal courts' jurisdiction over non-member AMERIND in the litigation challenged here, is a federal question.

8. Diversity jurisdiction is also present because complete diversity exists under 28 U.S.C. § 1332 and the amount in controversy exceeds $75,000.

9. Blackfeet Housing has filed claims in Blackfeet tribal courts seeking over $1.4 million plus unspecified punitive damages.

10. This action seeks declaratory and injunctive relief against the litigation in Blackfeet tribal courts, and accordingly the amount in controversy in this case exceeds $75,000.

**GENERAL ALLEGATIONS**

I.  **AMERIND**

11. AMERIND is a tribal corporation formed under federal law by three federally recognized Indian tribes pursuant to Section 17 the Indian Reorganization Act, 25 U.S.C. § 477 (Section 17 Tribal Corporation). The three charter tribes are the Red Lake Band of Chippewa Indians, the Confederated Salish and Kootenai Tribes of the Flathead Reservation, and the Pueblo of Santa Ana.

12. AMERIND is uniquely tribal in nature. It is the only federally chartered tribal corporation formed as a governmental entity risk pool to provide insurance coverage to tribal and Indian interests on tribal and individual Indian lands. AMERIND was formed in 1986 to address a dearth of affordable housing insurance options for tribal governments and entities. Over time, AMERIND's legal status and composition as an inter-tribal entity has empowered its ability to tailor its growth and development to the unique needs and collective challenges faced by tribal nations, their communities and citizens.

13. AMERIND is a non-stock corporation that benefits its 400-plus member entities, all of whom are American Indian or Alaska Native tribal governments, tribal housing authorities, or tribal businesses. AMERIND provides risk-sharing insurance products and services to its members, including property, liability, tribal workers' compensation, and tribal homeowners and renters coverage. Through contractual agreements, members are required to contribute capital to the corporation's business lines, from which AMERIND pays all covered claims in those respective lines of coverage. When appropriate and possible, on an annual potential basis, AMERIND returns to its members excess reserves from its tribal housing coverage business line.

14. AMERIND's three charter tribes possess tribal sovereign immunity.

15. AMERIND's charter, granted by the federal government, provides that it possesses tribal sovereign immunity. Section 16.1 of AMERIND's federal corporate charter provides that "the Corporation is an instrumentality of the Charter Tribes and is entitled to all of the privileges and immunities of the Charter Tribes, individually and jointly."

## II. Participation Agreement

16. On or about March 30, 2012, Blackfeet Housing entered into a "Tribal Operations Protection Plan Participation Agreement" (Participation Agreement) with AMERIND, by which Blackfeet Housing became a participant in AMERIND's Tribal Operations Protection Plan (TOPP).

17. TOPP is a self-insurance risk-sharing cell, and by entering into the Participation Agreement, participants "agree to jointly share in the costs of protecting against financial loss and in the monetary claims that may arise from financial loss." Part. Agmt. at 1. This includes being responsible for annual contributions consisting of "[a] proportional share of expected loss costs of TOPP" as well as "[a] proportional share of operational costs of TOPP." Part. Agmt. § 1(a)(1), (2).

18. The Participation Agreement provides that "TOPP shall indemnify the Participant in accordance with any coverage documents issued to the Participant and this agreement, but only from the assets of TOPP." Part. Agmt. § 4(i)(a).

19. The Participation Agreement contemplates that there may be disputes of denial of indemnification, and, in order to provide assurance to the hundreds of sovereign tribal entities that cooperate to promote consistency, equity, and sustainability in the pool, it provides a comprehensive remedial scheme for addressing any such disputes, in Section 8.

4

20. Section 8(a) provides that "[t]he parties shall resolve any dispute arising out of or relating to this agreement by informal mediation and, if the parties do not resolve the dispute within 90 days of the initiation of informal mediation, then by binding arbitration" according to a process specified in the agreement.

21. Section 8(a)(5) provides that the arbitrator's award is final and may be entered and enforced in one of three "Courts of Competent Jurisdiction": this Court, the Second Judicial District Court of the State of New Mexico, or the Pueblo of Santa Ana Tribal Court.

22. Section 8(a)(9) provides that "either party may bring an action in . . . one of the Courts of Competent Jurisdiction to: (i) compel arbitration, (ii) determine the validity of this agreement or this section 8, (iii) determine the authority of the signatories to this agreement, or (iv) determine whether tribal sovereign immunity or tribal remedies has been waived. To the extent permitted by law, the Participant waives the exhaustion of tribal remedies."

### III.  Claims Background, Denial, and Suit in Blackfeet Tribal Courts

23. As a participant in the TOPP and pursuant to the Participation Agreement, Blackfeet Housing obtained four insurance policies.

24. Blackfeet Housing is very familiar with AMERIND's claims process. It has held policies with and submitted claims to AMERIND for approximately 30 years, and has filed approximately 11 claims a year since 2004.

25. In April 2013, instead of using the normal claims process, Blackfeet Housing's attorney sent a brief letter to AMERIND's CEO stating that an unspecified number of dwellings designed, built, and maintained by Blackfeet Housing were experiencing snow entering through vents and "crawl space" issues. AMERIND repeatedly requested that Blackfeet Housing file formal claims on the properties pursuant to the TOPP coverage and Participation Agreement; it

also made extensive efforts to learn more about the dwellings, whether they were covered dwellings, and any details regarding the nature of Blackfeet Housing's concerns.

26. Eventually, in August 2013, Blackfeet Housing made claims under the policies. The claims involved 130 dwellings and made clear that Blackfeet Housing's "issues" involved the presence of mold in the dwellings, a condition specifically excluded in the TOPP coverage documents. AMERIND immediately began its routine claims processes for this relatively large number of homes. In February 2014, while evaluating the claims, AMERIND received from Blackfeet Housing's attorney a "Damages Brochure" with a demand for over $1.4 million.

27. In March 2014, after investigating, evaluating, and reviewing the claims in good faith, AMERIND denied the claims for the specific exclusion of mold, for construction defects, for failure to maintain the dwellings properly, and for failure to report damage on a timely basis.

28. Blackfeet Housing disputed the denial of its claims, but instead of invoking the arbitration remedies required by the Participation Agreement it signed, Blackfeet Housing filed a complaint against AMERIND in Blackfeet tribal court in Browning, Montana, on April 18, 2014. *Blackfeet Housing v. AMERIND Risk Management Corp.,* Case NO. 2014 CA60 (filed Apr. 18, 2014).

29. Blackfeet Housing did not notify AMERIND that it had filed suit in tribal court. In fact, Blackfeet Housing first purported to serve the complaint *over five months later*, on September 29, 2014.

30. AMERIND made a special appearance in Blackfeet tribal court and filed a motion to dismiss for lack of jurisdiction and on other grounds on October 17, 2014. Almost a year later, on October 1, 2015, the motion was denied, with the court holding that it had jurisdiction over

AMERIND, rejecting AMERIND's assertion of sovereign immunity and reliance on the promises made in the Participation Agreement.

31. AMERIND appealed to the Blackfeet Court of Appeals. That court held oral argument on March 22, 2016. By statute, the court was required to issue a ruling within 15 days. *See* Blackfeet Tribal Law and Order Code, Chapter 11, Section 46 (*available at* http://www.narf.org/nill/codes/blackfeetcode/blkftcode11appeal.html). More than six months later, the court has failed to issue any ruling. Thus, AMERIND has been subject to the unlawful assertion of jurisdiction of Blackfeet courts for almost two-and-a-half years.

32. AMERIND filed for arbitration before the AAA in December 2014. During the pendency of the arbitration, AMERIND filed suit in this Court to compel arbitration, invoking federal question jurisdiction, but this Court held that it lacked federal question jurisdiction over a contractual claim to compel arbitration, without more, noting that there was no claim challenging the jurisdiction of the Blackfeet tribal courts. *AMERIND Risk Mgmt. Corp. v. Blackfeet Housing,* Civil. No. 15-00072 WJ/KBM, Doc. 36 (Order dated May 11, 2015). AMERIND's appeal from that decision was voluntarily dismissed on March 2, 2016. *AMERIND Risk Mgmt. Corp. v. Blackfeet Housing,* No. 15-2089 (10th Cir. Mar. 2, 2016).

33. During litigation in this Court, the arbitration was held in abeyance for one year pursuant to an agreement between Blackfeet Housing and AMERIND. After one year, the file was closed, and the arbitration is no longer pending.

34. This complaint seeks declaratory and injunctive relief to address the lack of jurisdiction in the Blackfeet tribal courts, which is a federal question.

35. Blackfeet tribal courts do not have any substantial claim of jurisdiction here. Rather, Blackfeet tribal courts' assertion of jurisdiction over AMERIND here is patently violative of express jurisdictional prohibitions.

36. AMERIND has appealed to the Blackfeet Tribe's highest court to contest the jurisdiction of Blackfeet tribal courts, and more than five months after a ruling was due by statute, that court has unlawfully failed to issue any ruling ending the unlawful assertion of jurisdiction. Thus, even if Blackfeet Housing had not waived exhaustion of tribal remedies in Section 8(a)(9) of the Participation Agreement, AMERIND would in any event have exhausted all available Blackfeet tribal court remedies to contest unlawful jurisdiction there.

## FIRST CAUSE OF ACTION

### DECLARATORY JUDGMENT—ABSENCE OF BLACKFEET TRIBAL COURT JURISDICTION

37. AMERIND realleges and incorporates the preceding paragraphs.

38. AMERIND seeks and is entitled to a declaration that as a matter of federal law, Blackfeet tribal courts lack jurisdiction over the claims brought by Blackfeet Housing against AMERIND in Blackfeet tribal court.

39. Blackfeet tribal courts lack jurisdiction over AMERIND as a matter of federal law because AMERIND is not a member of the Blackfeet Tribe and has not engaged in any activity that would render it subject to the jurisdiction of Blackfeet tribal courts. When AMERIND agreed to enter into a contractual relationship with Blackfeet Housing, it did so only on terms that expressly provide that no aspect of the contractual relationship is subject to the jurisdiction of Blackfeet tribal courts.

40. Section 8 of the Participation Agreement specifies that all disputes over denied claims must be arbitrated, and all disputes about the validity of this arbitration requirement must

be brought in one of three specified "Courts of Competent Jurisdiction," which do not include Blackfeet tribal courts.

41. AMERIND is entitled to a declaration that Section 8 is valid and that therefore Blackfeet tribal courts lack jurisdiction over AMERIND.

42. Blackfeet tribal courts also lack jurisdiction over AMERIND as a matter of federal law because AMERIND is a federally chartered Section 17 Tribal Corporation that enjoys tribal sovereign immunity absent waiver, and the Participation Agreement does not waive AMERIND's tribal sovereign immunity for actions in Blackfeet tribal courts.

43. AMERIND is entitled to a declaration that it has not waived sovereign immunity for the litigation in Blackfeet tribal courts.

44. Blackfeet tribal courts are not entitled to determine their jurisdiction in the first instance here because Blackfeet Housing expressly waived exhaustion of tribal remedies.

45. AMERIND is entitled to a declaration that Blackfeet Housing has waived exhaustion of tribal remedies.

46. In any event, Blackfeet tribal courts have already had an opportunity to determine their jurisdiction and have erroneously asserted jurisdiction over AMERIND in violation of federal law.

47. Declaratory relief is appropriate here, because it would clarify that any judgment obtained in Blackfeet tribal courts is unenforceable and of no effect, thus settling legal relations and terminating the controversy giving rise to this case.

## SECOND CAUSE OF ACTION

### INJUNCTION AGAINST TRIBAL COURT LITIGATION

48. AMERIND realleges and incorporates the preceding paragraphs.

49. AMERIND is entitled to a permanent injunction to prevent Blackfeet Housing from continuing with litigation in Blackfeet tribal courts against AMERIND or seeking to enforce any judgment obtained in those courts.

50. Blackfeet tribal courts lack jurisdiction over AMERIND as a matter of federal law.

51. AMERIND is suffering and will continue to suffer irreparable harm without injunctive relief. Due to Blackfeet Housing's actions, AMERIND has been and continues to be required to defend litigation in a distant forum that lacks jurisdiction over it, to protect against default judgments. The litigation has continued for over two and half years, with an ongoing delay in violation of the Blackfeet Tribe's statute. This burden has been and continues to be substantial in terms of time, attention, money, and AMERIND's staff resources. It has caused uncertainty among AMERIND's many members, all of whom indirectly share costs for litigation such as the Blackfeet tribal court litigation, regarding the costs of litigation risks that are foreclosed by the Participation Agreement.

52. Moreover, because AMERIND has tribal sovereign immunity, being brought before and having to defend against suit in Blackfeet tribal courts cause it irreparable harm by depriving it of the immunity to suit to which it is entitled under federal law.

53. Further, AMERIND will continue to suffer irreparable harm to its reputation and to its business by being subjected to suit over a disputed claim in a tribal court lacking jurisdiction over it, because its operating model is based upon the ability to provide insurance coverage without being involuntarily subject to potentially hundreds of tribal jurisdictions when claims are denied.

54. An injunction preventing Blackfeet Housing from continuing its litigation against AMERIND in Blackfeet tribal courts is necessary to remedy these harms.

55. The balance of equities favors AMERIND. Blackfeet Housing will not suffer any legally cognizable harm from an injunction against it continuing its suit in Blackfeet tribal court. It was never entitled to such relief and no principle of equity supports its blatant violation of its contractual restrictions and of federal law. AMERIND is entitled to an order that precludes Blackfeet Housing from proceeding against it in a court that so clearly lacks jurisdiction over it.

56. An injunction is in the public interest because entities such as AMERIND should not be involuntarily subjected to Blackfeet tribal jurisdiction in circumstances when that jurisdiction is patently lacking and where the parties to a contract have agreed that it does not exist. There is a strong public interest in not allowing court proceedings to go forward in a tribunal that is clearly without jurisdiction over the proceedings.

## **RELIEF REQUESTED**

WHEREFORE, in accordance with the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and general principles of equity, the Tribe seeks:

1. A declaration that the Blackfeet tribal courts lack subject matter and personal jurisdiction over AMERIND;

2. A declaration that AMERIND has not waived its sovereign immunity to suit in Blackfeet tribal courts;

3. A declaration that section 8 of the Participation Agreement is valid;

4. A declaration that Blackfeet Housing has waived exhaustion of tribal remedies;

5. An injunction against Blackfeet Housing's further litigation of its suit against AMERIND in Blackfeet tribal courts and against the enforcement of any judgment it might obtain;

6. All costs and fees as allowed by law; and

7. Such other and additional relief as the Court deems just and equitable.

DATED this 4th day of October 2016.

Allison C. Binney
*/s/ Merrill C. Godfrey*
Merrill C. Godfrey (No. 16-208)
Akin Gump Strauss Hauer & Feld, LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036-1564
(202) 887-4000
abinney@akingump.com
mgodfrey@akingump.com

*Attorneys for AMERIND Risk Management Corporation*