UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

AMERIND RISK MANAGEMENT
CORPORATION, a federally chartered
Section 17 Tribal Corporation,

    Plaintiff,

v.                                                 No. 16 CV 1093 JAP/KK

BLACKFEET HOUSING,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff Amerind Risk Management Corporation (Plaintiff) seeks declaratory and injunctive relief from litigation brought by Defendant Blackfeet Housing (Defendant) in the Blackfeet Tribal Courts. *See* COMPLAINT (Doc. No. 1). Defendant has moved to dismiss the Complaint, arguing that issue preclusion bars Plaintiff from establishing subject matter jurisdiction, that the Court lacks personal jurisdiction over Defendant, and that Plaintiff has failed to exhaust tribal remedies. *See* MOTION TO DISMISS (Doc. No. 11) (Motion); MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (Doc. No. 12) (Memorandum); DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS (Doc. No. 19) (Reply). Plaintiff opposes the Motion. *See* RESPONSE IN OPPOSITION TO MOTION TO DISMISS (Doc. 17) (Response). The Court will deny the Motion.

**I.    BACKGROUND**

Plaintiff is a federally-chartered tribal corporation formed under Section 17 of the Indian Reorganization Act, 25 U.S.C. § 477. *See* Compl. ¶ 11. The charter tribes are the Red Lake Band

1

of Chippewa Indians, the Confederated Salish and Kootenai Tribes of the Flathead Reservation, and the Pueblo of Santa Ana. *See* Compl. ¶ 11. Plaintiff was formed to provide risk-sharing self-insurance for tribal governments and entities in response to a lack of affordable insurance options on Indian lands. *See* Compl. ¶ 12. Plaintiff has over 400 tribal member entities that contribute capital to a risk pool for each line of coverage, from which Plaintiff pays all covered claims. *See* Compl. ¶ 13. Members' participation in the risk-sharing group is governed by contractual agreement. *See* Compl. ¶ 13.

Defendant is a member entity that entered into a Participation Agreement (PA) in March 2012 to join Plaintiff's Tribal Operations Protection Plan (TOPP). *See* Compl. ¶ 16. The PA provides that participants in TOPP "agree to jointly share in the costs of protecting against financial loss and in the monetary claims that may arise from financial loss." Compl. ¶ 17. They are "responsible for annual contributions consisting of a proportional share of expected loss costs of TOPP as well as a proportional share of operational costs of TOPP." Compl. ¶ 17 (internal brackets and quotation marks omitted). In return, the PA guarantees that members are indemnified "in accordance with any coverage documents issued to the Participant and this agreement, but only from the assets of TOPP." Compl. ¶ 18.

The PA contains agreed-upon procedures for the resolution of any disputes between Plaintiff and participants that arise out of or are related to the PA, including denials of indemnification. *See* Compl. ¶¶ 19–20. Disagreements must first be addressed through informal mediation, which, if not successful within 90 days, is to be followed by binding arbitration according to a specified process. *See* Compl. ¶ 20. The PA provides that the "arbitrator's award is final and may be entered and enforced in one of three Courts of Competent Jurisdiction: this Court, the Second Judicial District Court of the State of New Mexico, or the Pueblo of Santa Ana

Tribal Court." Compl. ¶ 21. The PA allows "either party [to] bring an action in one of the Courts of Competent Jurisdiction to: (i) compel arbitration, (ii) determine the validity of [the PA], (iii) determine the authority of the signatories to [the PA], or (iv) determine whether tribal sovereign immunity or tribal remedies has been waived." Compl. ¶ 22. The PA also specifies that participants in TOPP agree to waive the exhaustion of tribal remedies to the extent permitted by law. *See* Compl. ¶ 22.

As a participant in TOPP governed by the March 2012 PA, Defendant obtained four insurance policies from Plaintiff. *See* Compl. ¶ 23. Defendant contacted Plaintiff in April 2013 regarding "snow entering through vents and 'crawl space' issues" with some of Defendant's dwellings. Compl. ¶ 25. Defendant then made formal claims under its policies for 130 dwellings in August 2013. *See* Compl. ¶ 26. These claims were related to the presence of mold in the dwellings, which is specifically excluded from coverage under TOPP. *See* Compl. ¶ 26.

In February 2014, while Plaintiff was still evaluating the claims, Defendant sent Plaintiff a demand for over 1.4 million dollars. *See* Compl. ¶ 26. Plaintiff denied the claims in March 2014 "for the specific exclusion of mold, for construction defects, for failure to maintain the dwellings properly, and for failure to report damage on a timely basis." Compl. ¶ 27. In April 2014, rather than invoking the dispute resolution procedures contained in the PA, Defendant filed suit against Plaintiff in the Blackfeet Tribal Court. *See* Compl. ¶ 28; *Blackfeet Hous. v. Amerind Risk Mgmt. Corp.*, Case No. 2014 CA-60 (filed April 18, 2014).

Plaintiff made a special appearance in the Blackfeet Tribal Court and moved to dismiss the suit for lack of jurisdiction, asserting sovereign immunity and relying on the promises in the PA. *See* Compl. ¶ 30. In December 2014, while the motion to dismiss was pending in the tribal court, Plaintiff filed for arbitration before the American Arbitration Association. *See* Compl. ¶¶

30, 32. Plaintiff then filed suit in this Court to compel arbitration. *See* Compl. ¶ 32; *Amerind Risk Mgmt. Corp. v. Blackfeet Hous.*, No. 15-cv-00072 WJ/KBM (D.N.M. filed January 28, 2015). District Judge William Johnson dismissed the suit for lack of jurisdiction after concluding that the claim to compel arbitration of a contractual dispute did not raise an issue of federal law. *See* Compl. ¶ 32; MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND DENYING THE MOTION WITH REGARD TO OTHER GROUNDS FOR DISMISSAL (Doc. No. 36), *Amerind Risk Mgmt. Corp. v. Blackfeet Hous.*, No. 15-cv-00072 WJ/KBM (D.N.M. May 11, 2015). Plaintiff filed an appeal in the Court of Appeals for the Tenth Circuit, but voluntarily dismissed the appeal before argument. *See* Compl. ¶ 32; *Amerind Risk Mgmt. Corp. v. Blackfeet Hous.*, No. 15-2089 (10th Cir. Mar. 2, 2016). The arbitration file was closed and is no longer pending. *See* Compl. ¶ 33.

      On October 1, 2015, the Blackfeet Tribal Court denied Plaintiff's motion to dismiss after concluding that Plaintiff did not have tribal sovereign immunity and that the Blackfeet Tribal Court had jurisdiction to decide Defendant's claim. *See* Compl. ¶ 30; Resp. Ex. 2, *Blackfeet Hous. v. Amerind Risk Mgmt. Corp.*, Case No. 2014 CA-60 (Order filed Oct. 1, 2015). Plaintiff appealed the jurisdictional issue to the Blackfeet Court of Appeals, which heard oral argument on March 22, 2016, but had not yet decided the case when Plaintiff filed this suit for declaratory and injunctive relief from the tribal litigation. *See* Compl. ¶¶ 31, 34. However, the Blackfeet Court of Appeals has since issued its decision, holding that Plaintiff did have tribal sovereign immunity as a Section 17 tribal corporation, but that Plaintiff had waived that immunity by including an arbitration clause in its contractual agreement. *See* Resp. Ex. 3, *Blackfeet Hous. v. Amerind Risk Mgmt. Corp.*, Cause No. 2015-AP-09 (Order filed Nov. 7, 2016). The Blackfeet

Court of Appeals acknowledged Plaintiff's argument that any waiver of immunity was limited to the courts specified in the PA for enforcement of the arbitration provision, and stated that the Court would normally agree. *See* Resp. Ex. 3, *Blackfeet Hous. v. Amerind Risk Mgmt. Corp.*, Cause No. 2015-AP-09, at 16, ¶ 20 (Order filed Nov. 7, 2016). But without pointing to any reason for an exception to the limited waiver, the Blackfeet Court of Appeals appears to have concluded that it had jurisdiction. *See id.* at 16–18, ¶¶ 20–25. The Blackfeet Court of Appeals ordered the parties to "proceed to mediation as contemplated by the Participation Agreement and thereafter to arbitration if needed." *See id.* at 18, ¶ 25. Because it concluded that Plaintiff "previously failed to properly mediate this dispute, and caused Blackfeet Housing to incur costs for an illusory mediation at great expense," the Blackfeet Court of Appeals ordered that Plaintiff would be "responsible for the entire expense of the future mediation." *See id.* at 18, ¶ 25.

## II.     DISCUSSION

Plaintiff contends that the Blackfeet Tribal Court and the Blackfeet Court of Appeals lack jurisdiction over Plaintiff and therefore lack jurisdiction to issue any orders regarding the claims brought by Defendant against Plaintiff in the Blackfeet Tribal Court. *See* Compl. ¶¶ 38–43. Plaintiff states that because Defendant expressly waived exhaustion of tribal remedies in the PA, the Blackfeet tribal courts are not entitled to determine their jurisdiction in the first instance. *See* Compl. ¶¶ 44–45. Additionally, Plaintiff maintains that the Blackfeet courts have already had that opportunity. *See* Compl. ¶ 46. Plaintiff asks this Court to declare that the Blackfeet courts lack jurisdiction over Plaintiff and to enjoin Defendant from continuing litigation against Plaintiff in the Blackfeet tribal courts. *See* Compl. ¶¶ 38, 49.

Defendant has moved to dismiss Plaintiff's Complaint under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(6), and the principle of deference to tribal courts. *See* Mot. at

2. Defendant argues that this Court's dismissal of Plaintiff's prior suit for lack of federal question jurisdiction and Plaintiff's voluntary dismissal of its Tenth Circuit appeal after raising the issue of diversity jurisdiction preclude Plaintiff from establishing this Court's subject matter jurisdiction over this case. *See* Memo. at 7–8. Additionally, Defendant asserts that this Court lacks personal jurisdiction over Defendant and that Plaintiff has failed to exhaust tribal remedies. *See* Memo. at 8.

In resolving the Motion, the Court will take the well-pleaded allegations of the Complaint as true, and it will not consider materials outside of the pleadings other than those referenced in the Complaint and central to Plaintiff's claim, those necessary to resolve jurisdictional facts, and court documents of which the Court may take judicial notice. *See Pace v. Swerdlow*, 519 F.3d 1067, 1072–73 (10th Cir. 2008) (in resolving a motion to dismiss, district courts may properly consider documents referred to in the complaint and central to the plaintiff's claim, and may take judicial notice of adjudicative facts); *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995) (when jurisdictional facts are challenged, the district court may consider materials outside the pleadings without converting the motion to one for summary judgment); *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir.1979) ("[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").

  **A.**  **Subject Matter Jurisdiction**

Defendant argues that both issue preclusion and claim preclusion prevent Plaintiff from establishing this Court's subject matter jurisdiction. *See* Memo. at 7–9; Reply at 5, 9. Issue preclusion bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of

a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (internal quotation marks omitted). Issue preclusion applies when:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Park Lake Res. Ltd. Liab. Co. v. U.S. Dep't of Agric.*, 378 F.3d 1132, 1136 (10th Cir. 2004) (quoting *Dodge v. Cotter Corp.*, 203 F.3d 1190, 1198 (10th Cir. 2000)). "By precluding parties from contesting matters that they have had a full and fair opportunity to litigate, [issue preclusion] protect[s] against the expense and vexation attending multiple lawsuits, conserv[es] judicial resources, and foster[s] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Taylor*, 553 U.S. at 892 (internal brackets and quotation marks omitted). Even though a dismissal for lack of jurisdiction is not "on the merits" of the underlying claim, it nevertheless "preclude[s] relitigation of the issues determined in ruling on the jurisdiction question." *Park Lake*, 378 F.3d at 1136 (internal quotation marks omitted). But it does not preclude the consideration of issues that have not yet been decided. *See Matosantos Commercial Corp. v. Applebee's Intern., Inc.*, 245 F.3d 1203, 1209 (10th Cir. 2001) ("A jurisdictional dismissal precludes only the relitigation of the ground of that dismissal, and thus has collateral estoppel (issue preclusion) effect rather than the broader res judicata effect." (internal brackets and quotation marks omitted)).

The Court previously concluded in No. 15-cv-00072 WJ/KBM that it lacked jurisdiction over Plaintiff's suit to compel arbitration because neither the Complaint in that case nor the underlying contractual dispute raised any issues of federal law. *See Amerind Risk Mgmt. Corp. v. Blackfeet Hous.*, No. 15-cv-00072 WJ/KBM (D.N.M. May 11, 2015). Here, Plaintiff has alleged

federal jurisdiction to determine the scope of the Blackfeet Tribal Court's jurisdiction over Plaintiff as a nonmember of the tribe. *See* Compl. ¶ 7. Defendant states that Plaintiff's current claims are "essentially identical" to those in its first suit, *see* Memo. at 9–10, but the Court earlier noted specifically that the extent of tribal jurisdiction was not before the Court, *see Amerind Risk Mgmt. Corp. v. Blackfeet Hous.*, No. 15-cv-00072 WJ/KBM (D.N.M. May 11, 2015). While the substantive facts of the underlying dispute between the parties are the same, the jurisdictional issue is not, and consequently the prior determination that jurisdiction was lacking will have no preclusive effect in this case.

"[T]he scope of a tribal court's jurisdiction is a federal question over which federal district courts have jurisdiction." *Thlopthlocco Tribal Town v. Stidham*, 762 F.3d 1226, 1234 (10th Cir. 2014) (internal quotation marks omitted) (considering a tribal court's exercise of jurisdiction over another tribe). *See also Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 853 (1985) ("[A] federal court may determine under § 1331 whether a tribal court has exceeded the lawful limits of its jurisdiction."). Although Defendant questions the reasoning behind this principle, *see* Reply at 6–7, it presents no law to the contrary. The Court therefore concludes that it has jurisdiction under 28 U.S.C. § 1331 to determine the extent of the Blackfeet Tribal Court's jurisdiction over Plaintiff.

Additionally, the Court concludes that it is not precluded from considering diversity jurisdiction in the present suit because that issue has not previously been decided. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("The preclusive effect, however, [of a dismissal for lack of jurisdiction] is one of issue preclusion (collateral estoppel) rather than claim preclusion (res judicata)."). While Plaintiff did raise diversity jurisdiction in its appeal to

the Tenth Circuit, the issue had not been raised in the district court and the appeal was dismissed before argument without any decision. *See* Compl. ¶ 32; Resp. at 16; Memo. at 6–8.

Defendant argues that diversity does not exist because Plaintiff "is a member-owned organization" that shares in the citizenship of its members, including Defendant. *See* Memo. at 12. Unincorporated entities share the citizenship of all members for purposes of diversity. *See Americold Realty Trust v. Conagra Foods, Inc.*, 136 S.Ct. 1012, 1015 (2016). But the same rules do not apply to corporations. *See id.* (citizenship of a corporation is determined by its place of incorporation and principal place of business). Plaintiff is a federally-chartered tribal corporation with its principal place of business in New Mexico. *See* Compl. ¶ 3. "Such a corporate entity may be considered a citizen of the state of its principal place of business for diversity jurisdiction purposes." *Gaines v. Ski Apache*, 8 F.3d 726, 729 (10th Cir. 1993). Defendant, by contrast, is a Montana corporation with its principal place of business in Montana. *See* Compl. ¶ 5. Accordingly, the Court finds that the parties have diverse citizenship. Because Plaintiff seeks to halt tribal litigation in which Defendant claims over 1.4 million dollars in damages against Plaintiff, the amount in controversy requirement has been met. *See McPhail v. Deere & Co.*, 529 F.3d 947, 953 (10th Cir. 2008) (plaintiff must allege an amount in excess of $75,000). The Court therefore concludes that diversity jurisdiction is present under 28 U.S.C. § 1332.

### B.    Personal Jurisdiction

Even though the Court has subject matter jurisdiction to consider Plaintiff's claim, Defendant argues that the Court lacks personal jurisdiction over Defendant so must still dismiss the Complaint. *See* Memo. at 14. "Where a district court considers a pre-trial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *AST Sports Sci.,*

*Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1056–57 (10th Cir. 2008). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *Id.* at 1057. "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

Plaintiff first contends that Defendant consented to the jurisdiction of this Court by its entry into the PA with Plaintiff. *See* Resp. at 16–17. Unlike subject matter jurisdiction, the requirements for personal jurisdiction may be waived by the parties. *See Burger King Corp.*, 471 U.S. at 472 n.14.

> [B]ecause the personal jurisdiction requirement is a waivable right, there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court. For example, particularly in the commercial context, parties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction. Where such forum-selection provisions have been obtained through freely negotiated agreements and are not unreasonable and unjust, their enforcement does not offend due process.

*Id.* (internal citations and quotation marks omitted). "[J]urisdiction over a party may be conferred upon a court by contractual agreement of the parties." *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202 (10th Cir.1986). "[A] valid consent or a stipulation that the court has jurisdiction prevents the successful assertion of a Rule 12(b)(2) defense." 5B Charles Alan Wright et al., Federal Practice and Procedure § 1351 (3d ed., Apr. 2016 update). The Court will therefore analyze the PA—the contract through which Defendant allegedly consented to jurisdiction.

The PA provides that disputes between the parties that are not resolved by informal mediation must be settled by binding arbitration. *See* Compl. ¶ 20. The arbitrator's award "may

be entered and enforced only in either the United States District Court for the District of New Mexico, the Second Judicial District Court of the State of New Mexico, or the Pueblo of Santa Ana Tribal Court." Compl. ¶ 21; Resp. Ex. 1, PA § 8(a)(5). "For this purpose, each party agrees to submit to the jurisdiction" of any of these three courts, referred to in the PA as the "Courts of Competent Jurisdiction." Compl. ¶ 21; Resp. Ex. 1, PA § 8(a)(5). Further, "[e]ither party may bring an action in either one of the Courts of Competent Jurisdiction to (i) compel arbitration, (ii) determine the validity of [the PA], (iii) determine the authority of the signatories to [the PA], or (iv) determine whether tribal sovereign immunity or tribal remedies has been waived." Compl. ¶ 22; Resp. Ex. 1, PA § 8(a)(9).

The plain language of the PA demonstrates that Defendant consented to the jurisdiction of the Court over the listed matters. Defendant argues that Section 8(a)(9) does not specify the meaning of "Courts of Competent Jurisdiction," so should be interpreted to include the Blackfeet Tribal Court. *See* Reply at 11–12. But contracts must be read as a whole, *see Mastro Plastics Corp. v. NLRB*, 350 U.S. 270, 279 (1956), and "Courts of Competent Jurisdiction" is defined in Section 8(a)(5) of the PA to include only the three listed courts. Additionally, while Defendant advocates for the inclusion of the Blackfeet Tribal Court, Defendant does not argue that Section 8(a)(9) is not a valid consent to the jurisdiction of this Court.

Because Plaintiff's claim concerns the validity of the PA as a bar to the jurisdiction of the Blackfeet tribal courts and whether Plaintiff's tribal sovereign immunity and Defendant's right to the exhaustion of tribal remedies have been waived, matters specified in Section 8(a)(9) of the PA, the Court finds that the PA is prima facie evidence that supports jurisdiction over Defendant. This jurisdictional stipulation will control unless Defendant "'clearly show[s] that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or

overreaching.'" *Niemi v. Lasshofer*, 770 F.3d 1331, 1351 (10th Cir. 2014) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). Defendant has not presented any such evidence, much less the compelling case required to defeat Plaintiff's prima facie showing.

"To the extent that parties have consented to personal jurisdiction in a certain forum, application of a forum state's long-arm statute and analysis of a party's contacts with the forum state are unnecessary." *Elec. Realty Assocs., L.P. v. Vaughan Real Estate, Inc.*, 897 F.Supp. 521, 522–23 (D.Kan. 1995). But undertaking the analysis in the interests of thoroughness, the Court reaches the same result. "New Mexico's long-arm statute . . . is coextensive with constitutional limitations imposed by the Due Process Clause." *Fireman's Fund Ins. Co. v. Thyssen Min. Const. of Canada, Ltd.*, 703 F.3d 488, 492–93 (10th Cir. 2012) (internal quotation marks omitted). "[W]ith respect to interstate contractual obligations, . . . parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King Corp.*, 471 U.S. at 473. Defendant maintains that it does not have sufficient contacts with New Mexico to allow the exercise of jurisdiction. *See* Memo. at 14–17. While the existence of a contract alone is not sufficient, "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" may demonstrate that "the defendant purposefully established minimum contacts within the forum." *Burger King Corp.*, 471 U.S. at 479.

Defendant is a tribal entity member of the plaintiff corporation that has held insurance policies with Plaintiff for approximately 30 years. *See* Compl. ¶ 24; Resp. at 18. The terms of the PA reveal that arbitration of any dispute must be held in Albuquerque, New Mexico, and that the arbitrator's award is enforceable only in certain courts, all located in New Mexico. *See* Resp. at

18–19, Ex. 1, PA § 8(a)(4)–(5). The substantive law that will govern the dispute and any construction of the PA is that of the Pueblo of Santa Ana, *see* Resp. at 19, Ex. 1, PA §§ 8(a)(6), 9(m), also in New Mexico. All notices and reports must be sent to Plaintiff in New Mexico, where all records are made available for inspection. *See* Resp. at 19, Ex. 1, PA §§ 4(b)(7), 9(d). The Court finds that Plaintiff has sufficiently alleged Defendant's purposeful connection to New Mexico through its relationship with Plaintiff. *See Burger King Corp.*, 471 U.S. at 480–82 (concluding that a franchisee had established minimum contacts through a lengthy contractual relationship that contemplated continuing regulation from the forum state and stipulated that the law of the forum state would govern disputes). Because this dispute arises out of Defendant's contacts with New Mexico through its contractual relationship with Plaintiff, Plaintiff has met its burden to establish the minimum contacts necessary for jurisdiction. *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1079–80 (10th Cir. 2008).

The Court will next "inquire whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice." *Id.* at 1080 (internal quotation marks omitted). But "it is incumbent on defendants to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (internal quotation marks omitted). This determination generally rests on the following factors:

> (1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states [or foreign nations] in furthering fundamental social policies.

*Id.*

Defendant contends that personal jurisdiction would be unreasonable because it has no presence in New Mexico and because the property and witnesses involved in the coverage

dispute are not located in New Mexico. *See* Memo. at 18–19. But the location of the property and witnesses is not relevant because the existence of coverage is not before the Court. Defendant's lack of presence in New Mexico is no different than any case involving a nonresident defendant, so does not present an unreasonable burden. *See Dudnikov*, 514 F.3d at 1081. Defendant also argues that Blackfeet tribal law governs the underlying dispute, so that Defendant will be prejudiced by being forced to litigate in a forum unfamiliar with that law, which will be inefficient and will intrude on tribal policy interests. *See* Memo. at 18–20. But the scope of tribal jurisdiction that forms the basis for Plaintiff's Complaint is a matter of federal law. *See Thlopthlocco Tribal Town*, 762 F.3d at 1234 (internal quotation marks omitted). Further, the PA provides that the governing substantive law is that of Santa Ana Pueblo. *See* Resp. at 19, Ex. 1, PA §§ 8(a)(6), 9(m), so that Blackfeet tribal law will not apply. The Court concludes that Defendant has failed to present a compelling case that jurisdiction would be unreasonable, and therefore that the exercise of personal jurisdiction over Defendant does not violate due process.

### C. Exhaustion of Tribal Remedies

Finally, Defendant argues that this Court should dismiss Plaintiff's suit for failure to exhaust tribal remedies. *See* Memo. at 21. "The tribal exhaustion rule requires that absent exceptional circumstances, federal courts typically should abstain from hearing cases that challenge tribal court jurisdiction until tribal court remedies, including tribal appellate review, are exhausted." *Thlopthlocco Tribal Town*, 762 F.3d at 1237. In this Circuit, application of the tribal exhaustion rule may not be waived. *See Navajo Nation v. Intermountain Steel Bldgs., Inc.*, 42 F.Supp.2d 1222, 1227 (D.N.M. 1999) ("'the requirement of exhaustion of tribal remedies' is not 'a mere defense to be raised or waived by the parties.'" (quoting *Smith v. Moffett*, 947 F.2d 442, 445 (10th Cir.1991)). But a federal court may excuse the exhaustion requirement "(1) where

an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith; (2) where the action is patently violative of express jurisdictional prohibitions; . . . (3) where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction[; or] (4) where it is clear that the tribal court lacks jurisdiction and that judicial proceedings would serve no purpose other than delay." *Thlopthlocco Tribal Town*, 762 F.3d at 1237 (internal citation and quotation marks omitted).

Despite the Order entered on November 7, 2016, by the Blackfeet Court of Appeals, Defendant argues that tribal remedies have not yet been exhausted because Defendant intends to "seek reconsideration and if necessary an appeal to the Blackfeet Supreme Court." Memo. at 3, 21. Plaintiff responds that no further exhaustion is required because the Blackfeet Court of Appeals has already ruled on its own jurisdiction and no further tribal remedies are available. *See* Resp. at 23–24. The Blackfeet Court of Appeals is the highest court of the Blackfeet Tribe. *See* Blackfeet Tribal Law & Order Code, ch. 11, § 1 (1974). Under tribal court rules of appellate procedure, the parties had ten days from the issuance of the November 7 decision in which to file a petition for rehearing. *See* Blackfeet Tribal Law & Order Code, ch. 11, § 50 (1974). Because that time has expired and the tribal court determination of jurisdiction is final, the Court concludes that Plaintiff has exhausted tribal remedies and Plaintiff's claim can now go forward in this Court. *See Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 19 (1987) ("If the Tribal Appeals Court upholds the lower court's determination that the tribal courts have jurisdiction, petitioner may challenge that ruling in the District Court.").

IT IS ORDERED that Defendant's MOTION TO DISMISS (Doc. No. 11) is DENIED.

*[signature]*
SENIOR UNITED STATES DISTRICT JUDGE