UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

AMERIND RISK MANAGEMENT
CORPORATION, a federally chartered
Section 17 Tribal Corporation,

    Plaintiff,

v.                                                      No. 16 CV 1093 JAP/KK

BLACKFEET HOUSING,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff Amerind Risk Management Corporation (Plaintiff) seeks declaratory and injunctive relief from litigation brought by Defendant Blackfeet Housing (Defendant) in the Blackfeet Tribal Courts.[1] The Court previously denied Defendant's motion to dismiss for lack of jurisdiction after concluding that the Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332 and personal jurisdiction over Defendant.[2] The Court also found that Plaintiff has exhausted tribal remedies, so that its challenge to the jurisdiction of the Blackfeet Tribal Courts may go forward in this Court. Both parties have now moved for summary judgment, and the motions are fully briefed.[3] The Court will grant summary judgment in favor of Plaintiff.

---

[1] COMPLAINT (Doc. No. 1).
[2] MEMORANDUM OPINION AND ORDER (Dec. 29, 2016) (Doc. No. 20).
[3] MOTION FOR SUMMARY JUDGMENT (Doc. No. 28); CROSS-MOTION FOR SUMMARY JUDGMENT (Doc. No. 34); DEFENDANT'S MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO AMERIND'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 33); AMERIND'S COMBINED RESPONSE TO BLACKFEET HOUSING'S MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF AMERIND'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 36); DEFENDANT'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT (Doc. No. 38).

## I. BACKGROUND

Although the issues before this Court are jurisdictional, at the root of the conflict between the parties is a dispute over insurance coverage. Plaintiff is a federally chartered tribal corporation formed under Section 17 of the Indian Reorganization Act, 25 U.S.C. § 5124 (formerly § 477). *See* Charter of Incorporation (Doc. No. 12-2). The charter tribes are the Red Lake Band of Chippewa Indians, the Confederated Salish and Kootenai Tribes of the Flathead Reservation, and the Pueblo of Santa Ana. Plaintiff was formed to provide risk-sharing self-insurance for tribal governments and entities in response to a lack of affordable insurance options on tribal lands. Plaintiff has over 400 tribal member entities that contribute capital to a risk pool for each line of coverage, from which Plaintiff pays all covered claims. Members' participation in the risk-sharing group is governed by contractual agreement.

Defendant is a member entity that entered into a Participation Agreement (PA) (Doc. No. 17-1) in March 2012 to join Plaintiff's Tribal Operations Protection Plan (TOPP) risk pool. The PA provides that participants in TOPP "agree to jointly share in the costs of protecting against financial loss and in the monetary claims that may arise from financial loss." In return, the PA guarantees that TOPP will indemnify members "in accordance with any coverage documents issued to the Participant and this agreement, but only from the assets of TOPP."

The PA contains procedures for the resolution of any disputes between Plaintiff and TOPP participants that arise out of or are related to the PA. Disagreements must first be addressed through informal mediation, which, if not successful within 90 days, is to be followed by binding arbitration according to a specified process. Arbitration is to be held in Albuquerque, New Mexico, and the arbitrator is to apply the substantive law of the Pueblo of Santa Ana. Any award may be entered and enforced only in one of three Courts of Competent Jurisdiction: this

Court, the Second Judicial District Court of the State of New Mexico, or the Pueblo of Santa Ana Tribal Court. Either party may also bring an action in any of the Courts of Competent Jurisdiction to compel arbitration, determine the validity of the PA, determine the authority of the signatories to the PA, or determine whether tribal sovereign immunity or tribal remedies have been waived.

As a participant in TOPP governed by the March 2012 PA, Defendant obtained four insurance policies from Plaintiff. Defendant contacted Plaintiff in April 2013 regarding issues with some of its covered properties. Then in August 2013 Defendant made formal claims under its policies for damage to 130 dwellings. In February 2014, while Plaintiff was still evaluating the claims, Defendant sent Plaintiff a demand for over 1.4 million dollars. Plaintiff denied the claims in March 2014. Defendant, rather than invoking the dispute resolution procedures contained in the PA, filed suit against Plaintiff in the Blackfeet Tribal Court alleging breach of fiduciary duty, breach of contract, breach of the duty of good faith, and violations of Blackfeet tribal law. *See Blackfeet Hous. v. Amerind Risk Mgmt. Corp.*, Case No. 2014 CA-60 (filed April 18, 2014) (Doc. No. 28-2).

Plaintiff made a special appearance in the Blackfeet Tribal Court and moved to dismiss the suit for lack of jurisdiction, asserting sovereign immunity and relying on the choice of forum provision in the PA. But the Blackfeet Tribal Court denied Plaintiff's motion to dismiss after concluding that Plaintiff did not have tribal sovereign immunity and that the Blackfeet Tribal Court had jurisdiction to decide Defendant's claim. *See Blackfeet Hous. v. Amerind Risk Mgmt. Corp.*, Case No. 2014 CA-60 (Order filed Oct. 1, 2015) (Doc. No. 17-2). Plaintiff appealed the jurisdictional issue to the Blackfeet Court of Appeals, which heard oral argument on March 22,

2016, but had not yet decided the case in October 2016 when Plaintiff filed this suit for declaratory and injunctive relief from the tribal litigation.

The Blackfeet Court of Appeals issued its decision in November 2016, holding that Plaintiff did have tribal sovereign immunity as a Section 17 tribal corporation, but that Plaintiff had waived that immunity by including an arbitration clause in the PA. *See Blackfeet Hous. v. Amerind Risk Mgmt. Corp.*, Cause No. 2015-AP-09 (Order filed Nov. 7, 2016) (Doc. No. 17-3). The Blackfeet Court of Appeals acknowledged Plaintiff's argument that any waiver of immunity was limited to the courts specified in the PA for enforcement of the arbitration provision, and stated that it would normally agree. *See id.* at 16, ¶ 20. But without giving any reason for broadening the limited waiver, the Blackfeet Court of Appeals appears to have concluded that it had jurisdiction. *See id.* at 16–18, ¶¶ 20–25. The Blackfeet Court of Appeals ordered the parties to "proceed to mediation as contemplated by the Participation Agreement and thereafter to arbitration if needed." *See id.* at 18, ¶ 25. Because it concluded that Plaintiff "previously failed to properly mediate this dispute, and caused Blackfeet Housing to incur costs for an illusory mediation at great expense," the Blackfeet Court of Appeals ordered that Plaintiff would be "responsible for the entire expense of the future mediation." *See id.* at 18, ¶ 25. The tribal court has since denied Defendant's motions to reconsider this ruling and to allow a rehearing.[4] The issue of the Blackfeet Tribal Court's jurisdiction is now before this Court.

## II. LEGAL STANDARD

"[T]he scope of a tribal court's jurisdiction is a federal question over which federal district courts have jurisdiction." *Thlopthlocco Tribal Town v. Stidham*, 762 F.3d 1226, 1234 (10th Cir. 2014) (internal quotation marks omitted) (considering a tribal court's exercise of

---

[4] NOTICE OF FILINGS IN BLACKFEET COURT OF APPEALS (Doc. No. 37); NOTICE OF ORDER BY BLACKFEET COURT OF APPEALS (Doc. No. 41).

jurisdiction over another tribe). Summary judgment may be granted if the moving party shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "When applying this standard, [the Court] view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the nonmoving party." *Scull v. New Mexico*, 236 F.3d 588, 595 (10th Cir. 2000) (internal quotation marks omitted). The court will analyze each motion individually and on its own merits if both parties have moved for summary judgment. *See Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) (explaining that "[c]ross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another."). Cross-motions for summary judgment entitle the Court "to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000). "A fact is material only if it might affect the outcome of the suit under the governing law. And a dispute over a material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1265–66 (10th Cir. 2015). "Where the facts are not in dispute . . . , summary disposition is appropriate." *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007).

**III. DISCUSSION**

Plaintiff contends that as a federally-chartered tribal corporation formed under Section 17, it possesses tribal sovereign immunity that it has waived only in the limited circumstances specified in the PA. Plaintiff asks the Court to declare that it has sovereign immunity from suit in the Blackfeet Tribal Courts, which consequently lack jurisdiction over Defendant's claims, and

5

that the dispute resolution procedures specified in the PA are applicable to the conflict. Plaintiff requests that the Court enjoin Defendant from attempting to further litigate this matter in the Blackfeet Tribal Courts or to enforce the invalid order of the Blackfeet Court of Appeals. By contrast, Defendant asserts that dispute resolution between the parties is governed by the TOPP Scope of Coverage Document (Doc. No. 36-1) (SCD) rather than the PA, and that in the SCD Plaintiff consented to the jurisdiction of the Blackfeet Tribal Courts and waived any sovereign immunity it might have. Additionally, Defendant disputes Plaintiff's entitlement to sovereign immunity and argues that jurisdiction is proper in the Blackfeet Tribal Courts based on *Montana v. United States*, 450 U.S. 544 (1981).

### A. Sovereign Immunity

"Indian tribes are distinct, independent political communities, retaining their original natural rights in matters of local self-government. Although no longer possessed of the full attributes of sovereignty, they remain a separate people, with the power of regulating their internal and social relations." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 55 (1978) (citations omitted) (internal quotation marks omitted). Because tribes retain sovereign powers, they possess immunity from suit to the extent that Congress has not abrogated that immunity and the tribe has not clearly waived its immunity. *Id.* at 58. "[S]overeign immunity [is] an inherent part of the concept of sovereignty and . . . 'is . . . necessary to promote . . . tribal self-determination, economic development, and cultural autonomy.'" *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1182 (10th Cir. 2010) (quoting *Am. Indian Agric. Credit Consortium, Inc. v. Standing Rock Sioux Tribe*, 780 F.2d 1374, 1378 (8th Cir. 1985)) (internal brackets omitted).

"Tribal sovereign immunity may extend to subdivisions of a tribe, including those engaged in economic activities, provided that the relationship between the tribe and the entity is sufficiently close to properly permit the entity to share in the tribe's immunity." *Breakthrough Mgmt. Grp.*, 629 F.3d at 1183. Subordinate economic entities may be created by tribes through incorporation under tribal or state law, or under Section 17 of the Indian Reorganization Act, 25 U.S.C. § 5124 (formerly § 477), which authorizes the Secretary of Interior "upon petition by any tribe" to "issue a charter of incorporation to such tribe." *Id.* at 1184 n.8.

"[S]ection 17 corporations retain their tribal status—and, accordingly, sovereign immunity in the absence of a 'sue and be sued' waiver[.]" *Id.* (quoting Clay Smith, *Tribal Sovereign Immunity: A Primer*, 50 Advoc. 19, 20–21 (May 2007) (footnotes omitted)); *see also Bales v. Chickasaw Nation Indus.*, 606 F.Supp.2d 1299, 1304, 1306 (D.N.M. 2009). It is therefore unnecessary to apply the "arm of the tribe" test when determining immunity. *Bales*, 606 F.Supp.2d at 1306. Plaintiff's charter does contain a "sue and be sued" clause. *See* Charter, § 8.18 (Doc. No. 12-2). However, this provision is not a blanket waiver of sovereign immunity because it requires that Plaintiff's sovereign immunity be specifically waived for each particular suit. *Id.* Any waiver must be in the form of a resolution adopted by the Board of Directors and must specify the parties and claims for which the waiver is granted. *See id.* at §§ 16.2–16.4. The Court therefore concludes, as the Blackfeet Court of Appeals acknowledged, that Plaintiff possesses tribal sovereign immunity as a federally-chartered Section 17 corporation. *See* Charter, §§ 4.2, 16.1 (Doc. No. 12-2) (providing that Plaintiff shares in the immunities of the chartering tribes); Nov. 7 Order, Doc. No. 17-3.

B.  **Tribal Jurisdiction**

Tribal sovereign immunity is a jurisdictional issue. *Bonnet v. Harvest (U.S.) Holdings, Inc.*, 741 F.3d 1155, 1158 (10th Cir. 2014). Because Plaintiff is entitled to sovereign immunity from suit, it is subject to the jurisdiction of the Blackfeet Tribal Courts only if Plaintiff has waived that immunity in relation to the lawsuit brought by Defendant. The Blackfeet Court of Appeals concluded that Plaintiff had waived its immunity by the inclusion of an arbitration clause within the PA, and it ordered the parties to comply with the provisions of the PA by participating in mediation and in arbitration if necessary. Doc. No. 17-3 at 18, ¶¶ 24–25. Plaintiff argues that the Blackfeet Court of Appeals was incorrect when it determined that Plaintiff had waived its immunity from suit in the Blackfeet Tribal Courts by the terms of the PA. "[A] federal court may determine under § 1331 whether a tribal court has exceeded the lawful limits of its jurisdiction." *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 853 (1985).

"It is settled that a waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'" *Santa Clara Pueblo*, 436 U.S. at 58 (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976)). An arbitration clause can constitute a clear waiver of immunity from suit brought to enforce an arbitration award. *See C & L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Okla.*, 532 U.S. 411, 418 (2001). In *C & L Enterprises*, the Supreme Court relied on provisions of a construction contract between a tribe and a contractor which "require[d] resolution of all contract-related disputes between C & L and the Tribe by binding arbitration [and stipulated that] ensuing arbitral awards may be reduced to judgment 'in accordance with applicable law in any court having jurisdiction thereof.'" *Id.* at 419. The contract specified that it was governed by "the law of the place where the Project is located[,]" in that case Oklahoma. *Id.* Oklahoma law vested jurisdiction to enforce an arbitration award in "any court of competent

8

jurisdiction of this state." *Id.* at 419–20. The Supreme Court therefore concluded that the tribe had waived its immunity from a suit brought in the Oklahoma state court to enforce an arbitration award entered on a contractual dispute. *Id.* at 423.

Defendant did not bring suit against Plaintiff in the Blackfeet Tribal Courts to enforce an arbitration award, but *C & L Enterprises* might be interpreted to suggest more broadly that a clause agreeing to arbitration could waive immunity from judicial enforcement of all of the contractual terms governing the arbitration. But unlike the tribe in *C & L Enterprises*, Plaintiff did not consent to the enforcement of the PA in any court. The PA specifies that an arbitration award may be entered and enforced only in this Court, the Second Judicial District Court of the State of New Mexico, or the Pueblo of Santa Ana Tribal Court. Under the terms of the PA either party may also bring an action to compel arbitration only in one of these three courts.

"[W]aivers of sovereign immunity are to be read narrowly and conditions on the waiver are to be strictly observed." *Ramey Constr. Co. v. Apache Tribe of Mescalero Reservation*, 673 F.2d 315, 320 (10th Cir. 1982). "When consent to be sued is given, the terms of the consent establish the bounds of a court's jurisdiction." *Id.* "A sovereign entity, such as a tribal corporation, may choose to waive its immunity as to certain claims, but not others, or it may set limits on an immunity waiver safe in the knowledge that a more extensive waiver cannot be implied[.]"*Atlantic Richfield Co. v. Pueblo of Laguna*, No. 1:15-cv-56-JAP/KK, 2016 WL 3574150, at *4 (D.N.M. May 20, 2016) (Unpublished). Consequently, any waiver based on the arbitration clause of the PA is limited to the three courts described in the PA. The Blackfeet Court of Appeals erred when it concluded that the arbitration clause in the PA constituted a waiver of Plaintiff's sovereign immunity such that the Blackfeet Tribal Courts had jurisdiction to enforce the terms of the PA.

9

But even though the Blackfeet Court of Appeals ordered compliance with the arbitration provisions of the PA, compulsion of arbitration was not the purpose of Defendant's action in tribal court. Defendant brought a variety of claims against Plaintiff, and the Blackfeet Court of Appeals appears to have determined that Plaintiff had waived its sovereign immunity from all suits arising from the contractual dispute. *See* Doc. No. 17-3 at 15–18. Defendant does not rely on the reasoning of the Blackfeet Court of Appeals, and it admits that the arbitration provisions of the PA provide no basis for the Blackfeet Tribal Courts to assert jurisdiction. *See* Def. Mot. at 6–7. Instead, Defendant contends that Plaintiff waived its immunity from suit in the Blackfeet Tribal Courts through the SCD and through representations in its marketing materials that it was willing to litigate in tribal court. Accordingly, the Court will consider whether Defendant has proven Plaintiff's waiver of immunity from Defendant's tribal court suit through those documents.

Defendant points to two sections in the SCD in which it asserts Plaintiff waived its immunity from suit in the Blackfeet Tribal Courts. Defendant first relies on paragraph 12 of the general coverage conditions, which prohibits legal action by a TOPP participant against Plaintiff prior to the determination of the amount of Plaintiff's obligation to pay on a third-party claim through either a settlement agreement or "a trial in a court of competent jurisdiction." Doc. No. 36-1. But this provision says nothing regarding suits against Plaintiff as a party other than to prevent their initiation prior to a determination of damages. Additionally, this clause is inapplicable to Defendant's suit against Plaintiff in the Blackfeet Tribal Court, which does not involve a third party claimant. *See TPLC, Inc. v. United Nat. Ins. Co.*, 44 F.3d 1484, 1496 (10th Cir. 1995). And the Tenth Circuit Court of Appeals has held that the phrase "court of competent jurisdiction" does not unequivocally waive sovereign immunity in a court that would otherwise

lack jurisdiction. *See Santana v. Muscogee (Creek) Nation ex rel. River Spirit Casino*, 508 F. App'x 821, 823 (10th Cir. 2013). Consequently, paragraph 12 does not clearly waive Plaintiff's sovereign immunity from Defendant's tribal court claims.

Defendant then looks to paragraph 15 of the general coverage conditions, which specifies arbitration methods in the case of a disagreement over whether coverage exists. This section states that "either party may make a written demand for arbitration" and that "[a]ny judgment upon the award rendered by the arbitrators may be entered to [sic] your tribal or any federal court of competent jurisdiction." Doc. No. 36-1. Defendant asserts that its conflict with Plaintiff is essentially a dispute over whether coverage is provided because all of its tribal court claims arise from Plaintiff's denial of coverage. Defendant maintains that these claims therefore fall squarely within the scope of paragraph 15 of the SCD and are not subject to the arbitration clause of the PA. Relying on *C & L Enterprises*, Defendant argues that Plaintiff waived its immunity from suit on these claims in the Blackfeet Tribal Courts by consenting to the enforcement of an arbitration award in tribal court.

Plaintiff responds that like paragraph 12, the arbitration clause of the SCD is inapplicable to a suit that does not involve a third party claim. Plaintiff notes that the arbitration provisions in the SCD are not the same as those in the PA, and it argues that this distinction is purposeful because paragraph 15 of the SCD applies only to the narrow issue of coverage of liability on a third-party claim. Should arbitration determine that the claim is covered, allowing an award to be entered in the same court that resolved the underlying dispute over damages is intended to afford a more streamlined remedy for the third party claimant. Plaintiff maintains that all direct disputes between Plaintiff and a TOPP participant, including those over coverage, must be resolved according to the arbitration provisions of the PA.

Unlike paragraph 12, the arbitration provision of the SCD does not contain any explicit reference to a third party claimant. However, even if the Court were to assume that the SCD arbitration clause could apply to a direct dispute over coverage, that category does not fully encompass the claims brought by Defendant in the Blackfeet Tribal Courts. This situation is distinguishable from *C & L Enterprises* because arbitration under paragraph 15 is not mandatory and because Defendant is not merely seeking to enforce the contractual terms of the SCD by entering an arbitral award of coverage in the tribal court. Defendant's tribal suit seeks damages, including punitive damages, for a variety of claims that may arise from the denial of coverage but are not limited to the request that coverage be provided.

Defendant urges the Court to interpret the SCD arbitration clause expansively and in isolation, and to disregard the conflicting PA provisions. But the terms of the SCD itself prevent that approach. The SCD specifies the binding nature of the "document," which Defendant interprets to refer only to the SCD. However, "document" is a defined term that includes the SCD, the PA, and other forms. Doc. No. 36-1. The two arbitration provisions must therefore be read together and interpreted so as to harmonize their requirements and give effect to both when possible. *See Greystone Const., Inc. v. National Fire & Marine Ins. Co.*, 661 F.3d 1272, 1283–84 (10th Cir. 2011). Claims such as those in Defendant's tribal court lawsuit are beyond the scope of paragraph 15, so must be governed by the PA. *C & L Enterprises* analyzed contractual provisions regarding jurisdiction, venue, and choice of law that all suggested suit should be filed in the state courts. These provisions, in concert, caused the Supreme Court to conclude that immunity had been waived for such a state-court lawsuit. By contrast, the PA specifically limits jurisdiction over disputes to three named courts, so that any waiver of sovereign immunity is also necessarily limited to those courts.

Further, the designation of a forum for the resolution of certain disputes does not constitute a clear waiver of sovereign immunity when it conflicts with specifically asserted limitations on the consent to suit. *See Ute Indian Tribe of the Uintah and Ouray Reservation v. Utah*, 790 F.3d 1000, 1009–10 (10th Cir. 2015) (distinguishing *C & L Enterprises* and holding that a provision that "'[o]riginal jurisdiction to hear and decide any disputes or litigation arising pursuant to or as a result of this Agreement shall be in the United States District Court for the District of Utah[]'" was not a waiver of sovereign immunity but was "best understood as a forum selection clause."). In addition to the limitations in the PA, Plaintiff's charter explicitly asserts its sovereign immunity and renders the tribal corporation amenable to suit only under the terms of a waiver of immunity adopted as a resolution by the Board of Directors. *See* Charter, §§ 8.18, 16.2–16.4 (Doc. No. 12-2). Accordingly, the Court concludes that Defendant's lawsuit is governed by the arbitration provisions of the PA, not the SCD, and that the SCD does not clearly waive Plaintiff's sovereign immunity from suit on Defendant's claims.

Neither has Plaintiff waived its sovereign immunity through the marketing materials presented by Defendant. In one article Defendant relies on, Plaintiff's COO stated that Plaintiff

> enjoy[s] the sovereignty of our chartering tribes . . . [c]ommercial insurers will agree to arbitration, but only in state courts. We, as a sovereign entity, agree to arbitration but we insist on tribal courts.

Doc. No. 33-2. In a second article, Plaintiff's general counsel stated that

> the insurer should be adjudicating claims based on tribal laws and policies. When tribal courts or arbitrators are utilized, it can cut down on what can be lengthy litigation as seen by state courts. Both parties may also feel more comfortable with the tribal adjudication process.

Doc. No. 33-3. Additionally, Defendant presents deposition testimony that Plaintiff markets itself as being willing to go into tribal court. But these vague statements by corporate officials cannot act to waive Plaintiff's sovereign immunity. *See Native American Distributing v. Seneca-*

*Cayuga Tobacco Co.*, 546 F.3d 1288, 1295 (10th Cir. 2008) (actions by officials or employees cannot affect a tribe's immunity from suit). Consequently, Plaintiff is immune from suit on Defendant's tribal court claims.

Defendant's reliance on *Montana*, 450 U.S. 544, to support the exercise of jurisdiction over Plaintiff by the Blackfeet Tribal Courts is unavailing because such jurisdiction must stem from the tribe's inherent sovereign authority. *See Plains Commerce Bank v. Long Family Land and Cattle Co.*, 554 U.S. 316, 335–37 (2008) (jurisdiction under *Montana* is justified by a tribe's sovereign interests). The Blackfeet Tribe has no inherent authority to subject another sovereign entity to suit in its courts. *See Amerind Risk Management Corp. v. Malaterre*, 633 F.3d 680, 685 n.5 (8th Cir. 2011) ("'The power to subject other sovereigns to suit in tribal court [is] . . . not a part of the tribes' inherent sovereignty.'" (quoting *Montana v. Gilham*, 133 F.3d 1133, 1138 (9th Cir. 1998)); *Kerr-McGee Corp. v. Farley*, 115 F.3d 1498, 1502 (10th Cir. 1997) ("[T]ribal jurisdiction is foreclosed by sovereign immunity."); *Sac & Fox Nation v. Hanson*, 47 F.3d 1061, 1062, 1063–65 (10th Cir. 1995) (a tribe's sovereign immunity cannot be waived by implication in contract actions (citing *American Indian Agric. Credit Consortium, Inc. v. Standing Rock Sioux Tribe*, 780 F.2d 1374, 1378–79 (8th Cir. 1985)). Accordingly, the Blackfeet Tribal Courts lack jurisdiction over Defendant's suit and the November 7, 2016 ultra vires order of the Blackfeet Court of Appeals is invalid. *See Plains Commerce Bank*, 554 U.S. at 324 (judgment issued in excess of tribal court jurisdiction is necessarily null and void).

### C. Injunction Preventing Litigation in the Blackfeet Tribal Courts

Plaintiff asks the Court to enjoin Defendant from further litigating this matter in the Blackfeet Tribal Courts or attempting to enforce the invalid tribal court order. "For a party to obtain a permanent injunction, it must prove: (1) actual success on the merits; (2) irreparable

harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007) (internal quotation marks omitted).

Plaintiff has demonstrated success on the merits of its claim because, as discussed above, the Blackfeet Tribal Courts lack jurisdiction over Defendant's suit against Plaintiff. Continued litigation in the Blackfeet Tribal Courts or enforcement of the invalid order would be in excess of their jurisdiction and in violation of Plaintiff's sovereign immunity. "The Tenth Circuit has 'repeatedly stated that ... an invasion of tribal sovereignty can constitute irreparable injury.'" *Ute Indian Tribe v. Utah*, 790 F.3d at 1005 (quoting *Wyandotte Nation v. Sebelius*, 443 F.3d 1247, 1255 (10th Cir. 2006)). A tribal entity that enjoys sovereign immunity "should not be compelled to expend time and effort on litigation in a court that does not have jurisdiction over them. The Tribe's full enjoyment of its sovereign immunity is irrevocably lost once the Tribe is compelled to endure the burdens of litigation." *Kiowa Indian Tribe of Okla. v. Hoover*, 150 F.3d 1163, 1165, 1171–72 (10th Cir. 1998) (internal citations and quotation marks omitted).

The threatened injury to Plaintiff outweighs any harm that an injunction may cause Defendant because it will merely result in enforcement of the contractual dispute resolution provisions to which Defendant agreed in the PA. Additionally, Defendant's "claims to injury should an injunction issue shrink to all but the vanishing point" when they are being enjoined only from litigating in a court without jurisdiction—"something they have no legal entitlement to do in the first place." *Ute Indian Tribe v. Utah*, 790 F.3d at 1007. Finally, the public interest will not be adversely affected by the restraint of proceedings that would infringe upon Plaintiff's sovereign immunity. *See Sac & Fox Nation*, 47 F.3d at 1064 (sovereign immunity is the power

of self-determination); *Prairie Band Potawatomi Nation v. Pierce*, 253 F.3d 1234, 1253 (10th Cir. 2001) (tribal self-government is in the public interest); *Seneca–Cayuga Tribe v. Okla. ex rel. Thompson*, 874 F.2d 709, 716 (10th Cir. 1989) (same). Accordingly, the Court will grant the injunction.

IT IS ORDERED that:

(1) Plaintiff's MOTION FOR SUMMARY JUDGMENT (Doc. No. 28) is GRANTED. A separate order of declaratory judgment and permanent injunction will be entered.

(2) Defendant's CROSS-MOTION FOR SUMMARY JUDGMENT (Doc. No. 34) is DENIED.

_____
SENIOR UNITED STATES DISTRICT JUDGE